# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DARRELL MATTHEWS, #370-293[1]  \*

    Petitioner.  \*

v.  \*  Civil No. PX-17-0036

FRANK BISHOP, Jr., Warden, *et al.*,  \*

    Respondents.  \*

## MEMORANDUM OPINION

Darrell Matthews brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his 2011 murder conviction primarily on the grounds that he received ineffective assistance of counsel. ECF No. 1. The Petition is ready for resolution and no hearing is necessary. *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the Petition and declines to issue a certificate of appealability.

**I.  Background**

In May 2011, Petitioner Matthews stood trial for first-degree attempted murder, first-degree assault, and weapons offenses in the Circuit Court for Montgomery County. The evidence at trial[2] demonstrated that on August 15, 2009, Matthews shot Augustus Williams, Jr. in the shoulder and chest at close range. Williams identified his assailant as Matthews to a bystander who rendered first aid. An acquaintance of Matthews, Antoine Johnson, also identified Matthews as the shooter. ECF No. 6-2 at 132–134, 140–144, 183, 186, 189–192, 229, 234–236. The State

---

[1] Petitioner is also known as Darryll Matthews. *See Matthews v. State,* 432 Md. 469 (2013).
[2] Matthews's second trial is the subject of this opinion. His first trial ended in a mistrial because of juror misconduct. *See State v. Matthews,* Case No. 114155C (Mont. Cty. Cir. Ct.), http://casesearch.courts.state.md.us/casesearch/inquiry (last viewed Oct. 25, 2019).

also admitted cell site evidence to corroborate Matthews whereabouts at the time of the shooting. ECF No. 6-2 at 76–79, 85–87.

Matthews was tried before a jury who found him guilty on all counts. On July 21, 2011, the Circuit Court sentenced Matthews to life imprisonment on the attempted first degree murder conviction; a consecutive twenty-year term for the use of a handgun during the commission of the crime; and two consecutive five year terms for possession of a regulated firearm by a prohibited person. ECF No. 6-6 at 19. Matthews appealed his convictions, challenging the denial of merger as to the two firearm offenses as well as the trial court's refusal to declare a mistrial after the jurors announced a deadlock in deliberations. *See Matthews v. State*, No. 1442 (unreported, Sept. Term 2011, Feb. 22, 2013); *see also* ECF No. 6-9. The Maryland Court of Special Appeals vacated one of Matthews's convictions for possession of a regulated firearm but otherwise affirmed the judgment in an unreported opinion. *Id.* The Maryland Court of Appeals denied further review on July 5, 2013. *Matthews v. State,* 432 Md. 469 (2013).

On October 3, 2014, Matthews moved for post-conviction relief in the Circuit Court for Montgomery County, contending that trial counsel provided ineffective assistance based on an array of omissions, including failure to request DNA and GSR testing on evidence found at the scene; failure to seek suppression of victim identification testimony and to introduce Antoine Johnson's prior out-of-court signed statement; failure to seek a lesser-included-offense jury instruction and missing witness instruction; failure to object to the state's closing argument; and a variety of claimed errors related to deliberations and sentencing. Matthews also challenged the effectiveness of appellate counsel for failing to raise on appeal the propriety of State's closing argument referencing witnesses who did not testify at trial. ECF No. 6-10 at 4–11, 14–20, 11–13.

After a hearing, the Montgomery County Circuit Court denied relief except as to whether trial counsel was ineffective for failing to file for review of sentence. The Court granted Matthews leave to seek review of sentence within thirty days from the date of its order. ECF No. 6-10 at 21.[5]

On August 12, 2015, Matthews requested that Court of Special Appeals review his claims of ineffective assistance based on: (1) trial counsel's failure to request a jury instruction on a lesser included offense of second-degree attempted murder; (2) counsel's waiver of Matthews' personal appearance in court to address a jury note; and (3) the failure to object to aspects of the State's closing argument. ECF No. 6-11 at 8. On February 4, 2016, the Court of Special Appeals ordered the State to address whether the post-conviction court erred by not finding counsel ineffective for failure to object or otherwise attempt to cure the State's remarks in rebuttal regarding Matthews' failure to call any witnesses. ECF No. 6-12 at 1. The State, in response, singularly argued that Matthews' application for leave to appeal was time-barred and generally meritless. ECF No. 6-12. Although the Court of Special Appeals rejected that the petition was time barred, it nonetheless summarily denied the application for leave to appeal. ECF No. 6-14.

Matthews thereafter filed a timely federal habeas Petition in this Court, arguing that the trial court erred in denying his motion for new trial. ECF No. 1. Matthews also resurrects his ineffectiveness arguments regarding the lion's share of claims raised in his state post-conviction proceeding. ECF No. 1-1, 1-2. The claims are thus exhausted as having been presented in Matthews' post-conviction proceedings and in his application for leave to appeal and not

---

[5] Because post-conviction counsel did not receive a copy of the court's order until April 29, 2015, counsel was unable to file an application for review of sentence within 30 days as ordered. On May 12, 2015, Matthews moved to reopen the post-conviction proceeding. ECF 6-1, dkt. no. 373. On May 27, 2015, the Circuit Court granted the requested relief for the limited purpose of "re-dating the order" so that petitioner could file a timely motion for review of sentence. ECF No. 6-1, dkt. no. 374. Matthews thereafter moved for sentencing reconsideration which was denied, and his original sentence was affirmed without a hearing on October 13, 2015. ECF No. 6-1, dkt. no. 387.

procedurally defaulted. Nonetheless, for the reasons stated below, the Petition must be denied in its entirety.

## II. Standard of Review

This Court may grant a petition for a writ of habeas corpus only to address violations of the United States Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2018) *see Wilson v. Corcoran*, 562 U.S. 1, 1 (2010); *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). In reviewing the decisions of the post-conviction court, this Court must give "considerable deference to the state court decision," and may not grant habeas relief unless the state court arrived at a "'decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Nicolas v. Att'y Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016) (quoting 28 U.S.C. § 2254(d)). Further, this Court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence," and "cannot disturb the state court's ruling simply because it is incorrect; it must also be unreasonable." *Id*.

For a state court's decision to be contrary to established federal law, the state court must have arrived at a conclusion contrary to the United States Supreme Court on a question of law or must have confronted facts that are "materially indistinguishable from a relevant Supreme Court" case but nevertheless arrived at the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000);

*see also Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005); *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014). As to an unreasonable determination, a federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411). Rather, the Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Barnes*, 751 F.3d at 238 (quoting *White v. Woodall*, 572 U.S. 415, 419–20 (2014)). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply de novo review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (internal marks and citations omitted).

### III. Analysis

#### A. Trial Court Error

Matthews first argues that the trial court erred in denying his motion for new trial based on the jury's inability to reach a verdict after several hours of deliberation. ECF No. 1-2 at 1. This closely parallels Matthews's direct appeal argument that the trial court abused its discretion by not declaring a mistrial during the first evening of deliberations when the jury announced it was deadlocked. ECF No. 6-7, at 14–21; ECF No. 6-9, at 8–20. The Court of Special Appeals determined that the trial court was well within his discretion to continue deliberations. ECF No. 6-9 at 18.

In reframing his earlier argument, Matthews does not assert that the trial court's error was one of federal constitutional magnitude. Nor could he. The claim squarely involves the exercise

5

of the trial court's discretion to allow further deliberations. Absent violation of a federal constitutional right, a habeas petitioner fails to state a cognizable claim for relief. 28 U.S.C. § 2254(a); *see also Wilson,* 562 U.S. at 1; *Spencer,* 18 F.3d at 239-40. Thus, the Court denies Matthews' petition on this ground.

### B. Prosecutorial Misconduct

Matthews next argues that the State engaged in prosecutorial misconduct, justifying the grant of habeas relief. Undoubtedly, "[a] fair trial in a fair tribunal is a basic requirement of due process," *In re Murchison*, 349 U.S. 133, 136 (1955), and so prosecutors must comport themselves accordingly. *See Berger v. United States*, 295 U.S. 78, 88 (1935). Prosecutorial misconduct is actionable when it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010). To succeed on this claim, Matthews "must show (1) 'that the prosecutor's remarks or conduct were improper' and (2) 'that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial.'" *Caro*, 597 F.3d at 624–25 (quoting *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002). Matthews presents two misconduct claims here.

Matthews first contends that the State committed reversible error by shifting the burden of production to the defense during rebuttal argument. The State argued:

> You can't go on about how this person didn't come in and this person didn't come in and not produce the ones you talked about the whole time. Where is Patrice Smith, the girlfriend he was with? Where is his brother, Jacob Chase? She just talked about him. Where is he at? Jeffrey Thomas? Pootie??

ECF No. 6-4 at 107–08. The post-conviction court, citing *Waddington v. Sarausad,* 555 U.S. 179, 193 (2009), found that these statements had not misled the jury as to the State's burden of proof. Specifically, the court determined that these comments taken as whole did not implicate Matthews'

right to remain silent or the choice not to mount an affirmative defense, and thus did not render the trial fundamentally unfair. *See Smith v. Phillips,* 455 U.S. 209, 219 (1982) (citing *Brady v. Maryland,* 373 U.S. 83, 87 (1963) (aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused")).

This finding is supported by the record. The challenged statements were brief and in response to Matthews's counsel arguing at length that the "social milieu" caused many eyewitnesses to avoid testifying at trial. ECF No. 6-4 at 104–07. Furthermore, the comments were limited, rhetorical, and designed to highlight the illogic of defense counsel's argument. The comments were not suggestive of burden shifting. Accordingly, Matthews cannot meet the heavy burden of showing that such comments so infected his trial as to deprive him constitutional due process.

Matthews also challenges that the State's rebuttal closing argument violated his Sixth Amendment right to confrontation. In rebuttal, the prosecutor argued:

> Ladies and gentlemen, you've already been here for three days. Do you really want to hear about a patrol officer that came and put tape around a house and there was nobody there? I set up a perimeter here and I directed traffic and I didn't allow cars. I don't think you wanted to hear all that. I mean that's why patrol officers aren't here.

ECF No. 6-4 at 108–09. Matthews maintains that the prosecutor's comments, suggestive of what the patrol officer may have said if called, stripped Matthews of his right to confront the witness. *See also* ECF No. 6-15 at 21.

The Court begins by noting that the statements, in fairness, represent not what a witness in fact had said, but rather a rhetorical, if not theatrical, explanation for why the jury's fact-finding mission would not be advanced by calling the patrol officers. The State simply underscored that

7

such officers were responsible for ministerial tasks and lacked any probative evidence. In this respect, the argument is clearly not "testimony" and cannot fairly be read otherwise.

However, even if the Court assumes that the State's comment is tantamount to an out-of-court statement which Matthews could not meaningfully challenge, that error is harmless. *Lilly v. Virginia*, 527 U.S. 116, 140 (1999). On habeas review, an error is harmless unless the error visited a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrhamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakas v. United States*, 328 U.S. 750, 776 (1946)). In assessing whether error is harmless, the Court considers: (1) "the importance of the witness'[s] testimony in the prosecution's case," (2) "whether the testimony was cumulative," (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points," (4) "the extent of cross-examination otherwise permitted," and (5) "the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

The post-conviction court, confronting this very issue, concluded that no basis existed to find the prosecutor's statements influenced the verdict. Nothing in the record sufficiently upends this sound analysis. Thus, the Court denies Matthews' Petition on this ground.

### C. Ineffective Assistance of Counsel

The Court next turns to Matthews' array of ineffectiveness challenges. Every accused enjoys the Sixth Amendment right to "the effective assistance of counsel." *Garza v. Idaho*, 139 S. Ct. 738, 743-44 (2019) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Challenges to the effectiveness of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Pursuant to *Strickland*, a petitioner must demonstrate both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland,* 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct such

that a petitioner alleging ineffective assistance must show that the proceeding was rendered fundamentally unfair due to counsel's errors. *Id*. at 689, 700. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

In the context of a *Strickland* claim previously litigated in state court, a petitioner also must show that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). "State court findings of fact made in the course of deciding an ineffectiveness claim" are presumptively correct. *Strickland*, 446 U.S. at 698; *see also* 28 U.S.C. § 2254(e)(1). A petitioner must rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

Matthews presents nine claims of ineffective assistance of trial counsel and one as to appellate counsel. ECF No. 1 at 6; ECF No. 1-1 3–4, 17). Each claim is addressed separately below.

### i. Witness identification

Matthews contends that law enforcement's out-of-court identification procedures compromised the reliability of the victim's identification at trial of Matthews as the perpetrator.

9

Impermissibly suggestive pretrial identification procedures compromise "a defendant's right to due process," thus warranting exclusion of any in-court identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 113 (1977); *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

Because Matthews and the victim knew one another before the shooting, the out-of-court identification did not infect the victim's in-court identification; accordingly, the post-conviction court concluded that the attorney did not err in failing to challenge the in-court identification. The post-conviction Court further found that because several other eye witnesses identified Matthews as the assailant, Matthews did not demonstrate that he was prejudiced by the introduction of the challenged evidence. ECF No. 6-10 at 4–5. The Court must credit the post-conviction court's finding as presumptively correct. Matthews has simply provided no basis for this Court to find habeas relief is warranted on this ground.

### ii. Failure to request DNA and GSR testing

Matthews next challenges defense counsel's decision not to request DNA or other forensic testing on a black glove found at the scene. ECF No. 1-1, 1-2; ECF No. 6-3 at 11, 19. Lead detective, Janice Bates, testified that a citizen found the glove at the scene and gave it to a patrol officer. Bates further testified that because the glove had been recovered from a citizen who gave it to the police, she had no confidence as to who else may have handled the glove before it was tagged and bagged as evidence. ECF No. 6-3 at 11, 13. Because of this potential contamination, no forensic testing was performed on the glove. ECF No. 6-3 at 20.

The post-conviction court ruled that counsel's "failure" to press for such testing amounted to a reasoned, strategic decision, not a deficiency in performance. The record supports the court's determination. Defense counsel, in fact, vigorously argued that the State's failure to test the glove should raise suspicion as to the viability of the State's case. ECF No. 6-4 at 98,

10

104 ("Isn't Gus Williams worth it, a GSR test?"). In this respect, defense counsel had the best of all worlds: counsel could argue that that failure to test the glove undermined the State's case without risking that actual testing would have produced incriminating results. Thus, this record presents no grounds to arrive at a different conclusion. Alternatively, the post-conviction court determined that even if the glove had been tested, the risk of contamination meant that the presence of DNA belonging to someone else provided little evidentiary value to Matthews. ECF No. 6-10 at pp. 5-6. On this record, this Court finds no grounds to upset the post-conviction court's determination that Matthews suffered no prejudice under *Strickland* based on trial counsel's strategy.

### iii. Antoine Johnson's written statement to police

Johnson at trial identified Matthews as the person who shot Williams. ECF No. 6-2 at 189–91. Johnson further testified that after the shooting, he saw Matthews moving toward the back of Johnson's parked car. ECF No. 6-2 at 209. On cross-examination, counsel directed Johnson to his prior statement that he had given Detective Burgess on August 16, 2009, in which Johnson said that after the shooting, Matthews walked to the car next to Johnson's and sat on that car's trunk. ECF No. 6-2 at 212–14.

As here, Matthews argued to the post-conviction court that counsel should have introduced Johnson's signed prior statement into evidence. The post-conviction court, after reviewing the written statement in its entirety,[9] found that counsel "had good reason not to introduce [it] into evidence" as it "is highly inculpatory." ECF No. 6-10 at 7. The court thus reasoned that counsel properly used the statement solely for impeachment purposes, and any failure to introduce the entire statement was neither ineffective assistance or prejudicial. Matthews provides no argument

---

[9] The written statement is not part of the record before this Court.

11

to rebut this finding. Thus, defense counsel's strategic decision to not seek introduction of Johnson's entire statement does not amount to ineffective assistance.

### iv. Jury instructions on lesser included offense and missing witnesses

Matthews argues that counsel's failure to request a lesser-included offense instruction for attempted second-degree murder as well as a missing witness instruction, in light of the prosecutor's closing rebuttal argument, amounted to ineffective assistance. "[U]pon proper request, a defendant is entitled to an instruction submitting to the jury any theory of defense for which there is a foundation in the evidence." *United States v. Hicks*, 748 F.2d 854, 857 (4th Cir. 1984) (citations omitted). However, the question on collateral attack is whether the failure to give the challenged instruction so infected the entire trial that the resulting conviction violated due process. *Smith v. Bordenkircher*, 718 F.2d 1273, 1276 (4th Cir. 1983).

The post-conviction court correctly noted that in Maryland, a jury may consider lesser-included offense so to avoid the possibility that jurors would convict the defendant of a more serious offense because they mistakenly believe that they had no other option. *State v. Bowers,* 349 Md. 710, 722 (1998). The post-conviction court ruled that this risk did not exist for Matthews because he had also been charged with first-degree assault. Accordingly, the jury had the option of convicting Matthews solely of the less serious assault offense. ECF No. 6-10 at 7-8. Based on the jurors' ability to exercise this option, the post-conviction court found nothing "patently unreasonable" about trial counsel's failure to ask for the lesser-included offense instruction. ECF No. 6-10 at 8. The Court sees no basis on which it could disagree with the post-conviction court's determination.

As to the missing witness instruction, the post-conviction court reasoned that once again, counsel made a strategic decision not to seek such an instruction so as to avoid underscoring

Matthews' own failure to call witnesses. The post-conviction court also reasoned that the jury had been properly instructed on the state's burden of proof, and that it must presume the jury had followed that instruction. ECF No. 10-6 at 9; ECF No. 10-4 at 60–61, 65–66. Thus, the failure to ask for this instruction did not prejudice Matthews.

Again, Matthews has failed carry the heavy burden of demonstrating that the post-conviction court's decision is contrary to, or an unreasonable application of, clearly established federal law, or that it is rooted in an unreasonable determination of the facts in light of the evidence presented to the state court. 28 U.S.C. § 2254(d)(1)-(2). The Court must therefore deny the Petition on this ground as well.

### v. Waiving Matthews' presence following the first jury note

Matthews contends that his counsel was deficient in waiving his presence when the jury submitted its first note requesting review of a witness's prior statement not substantively in evidence. ECF No. 6-4 at 126. A defendant maintains a Sixth Amendment right to appear personally at all proceedings which present any opportunity to defend himself, *United States v. Gagnon*, 470 U.S. 522, 526–26 (1985), or where his exclusion would interfere with his opportunity for cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987). The post-conviction court found that counsel's failure to insist on Matthews' presence did not prejudice him, even if it was error. The trial court properly responded to the note, and thus Matthews' absence did not, and could not, have altered the outcome of deliberations. This Court sees no error of constitutional magnitude to upset the post-conviction court's determination. Relief is denied on this ground as well.

### vi. The third jury note

Matthews also challenges defense counsel's handling of the deadlock note received at 10:00 p.m. on the first day of deliberations. The note read in its entirety: "We have continued our deliberations and find that we are irretrievably deadlocked 11 to 1. We do not believe that further consideration of this matter will result in any change in opinion." ECF No. 6-4 at 136. The prosecutor suggested that the jury be released and ordered to return in the morning. The defense moved for a mistrial, arguing that the jury had communicated several times to the court it was deadlocked. The trial court denied the defense motion, and released the jury with direction to return in the morning to resume deliberations.

Matthews contends, as he did to the post-conviction court, that counsel should have insisted that the court obtain the the guilty/not guilty breakdown of the 11 to 1 split. ECF No. 6-10 at 20. As the post-conviction court rightly noted (ECF No. 6-10 at 10), the request Matthews sought is improper under Maryland law and would have been denied. *Smoot v. State,* 31 Md. App. 138, 150 (1976). This Court sees no basis to find that defense counsel's failure to request that the trial court violate clearly established Maryland law could ever support habeas relief. *See* 28 U.S.C. § 2254(d)(1) - (2). The Petition must be denied on these grounds.

### vii. The State's closing argument

Matthews next argues that his counsel's performance fell below minimum standards because she failed to object to the "totality" of the State's rebuttal argument. To place this argument in context, the Court sets out the sequence of the arguments at issue. The prosecutor argued:

> You can't go on about how this person didn't come in and this person didn't come in and not produce the ones you talked about the whole time. Where is Patrice Smith, the girlfriend he was with? Where is his brother, Jacob Chase? She just talked about him. Where is he at? Jeffrey Thomas? Pootie?

14

ECF No. 6-4 at 107-08.

Matthews' counsel did not object. The prosecutor continued:

> But who is he with August 15th? He's with Pootie and he's with his brother, okay? And his brother has this vague address. He lives in the Baltimore area. Well, that really narrows it down. The only person who is going to know where . . . are these two. He's not here.

ECF No. 6-4 at 108.

Defense counsel objected which the court overruled. Next, the prosecutor argued:

> Now the excuse as to I was with my girlfriend, well, where is she? She didn't come in to say he was with her. All right. The reason, I submit to you, that there is no testimony from Patrice Smith . . . .

ECF No. 6-4, at 115. Once again, defense counsel objected, which the court overruled. *Id.*

Matthews argued to the post-conviction court that failure to object to the "the totality" of the State's closing arguments" amounted to ineffective assistance because counsel failed to preserve the question of the prosecutor's inappropriate comments for appeal. ECF 6-15 at 30–36. On this very argument, the post-conviction court explained that "[w]hen assessing a claim of ineffective assistance for failure to preserve an appellate claim, a reviewing court must necessarily look at the merits of the underlying claim. ECF No. 6-10 at 15–16. The Court recognized that in this respect "*Strickland's* performance and prejudice prongs naturally overlap, because the questions of whether counsel's performance was adequate and whether it prejudiced Defendant both will turn on the viability of the omitted claims, *i.e.,* whether there is a reasonable possibility of success. An advocate renders ineffective assistance only when he or she fails to preserve a claim that would have had a substantial possibility of resulting in a conviction reversal." *Id*. Ultimately, the court denied relief, concluding that the unpreserved claim was not one which would have a "substantial possibility" in reversing Matthews' conviction.

This Court, after independently reviewing the record, cannot conclude that the post-conviction court's determination was unreasonable in any sense. Thus, the Matthews' ineffectiveness claim as to his appellate counsel will not be disturbed here. 28 U.S.C. § 2254(d).

### viii. Sentencing

Matthews also challenges defense counsel's performance at his sentencing. Even though the State strongly advocated for imposition of the maximum allowable sentence, Matthews' counsel called no witnesses to testify on Matthews's behalf, despite Matthews having requested that counsel call his mother and his children's mother. ECF No. 10-15 at 11–13. Matthews contended at the post-conviction hearing that such witnesses could provide critical evidence in mitigation, (ECF No. 10-6 at 18; ECF No. 10-15 at 38–39), however Matthews' counsel never proffered to the post-conviction court the substance of the information which the witnesses would have offered.

Consequently, the post-conviction court found that Matthews failed to overcome his burden to establish deficient performance. The Court reasoned that testimony "designed to humanize the Defendant would have altered the sentencing outcome" in light of Matthews extensive criminal history and the sentencing court's determination that "'this was a case of straight-up, premeditated, willful, deliberate attempt to commit murder in the first degree.'" ECF No. 6-10 at 19. The post-conviction court, therefore, determined that Matthews failed to show a substantial possibility that even if the witnesses had testified, it would have changed the outcome. This court finds no reason to disagree with this determination.

### ix. Ineffective assistance of appellate counsel

As to Matthews' complaints regarding the effective assistance of appellate counsel, the United States Supreme Court has made clear that an indigent defendant does not have a

constitutional right to compel his appointed appellate counsel to raise every conceivable claim on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The high Court has observed that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751–52.

Appellate counsel did not raise the claim concerning the prosecutor's closing arguments previously discussed. ECF No. 6-4 at 107–08. The post-conviction court found no error, reasoning that appellate counsel properly focused on meritorious arguments regarding merger of counts and the trial court's refusal to declare a mistrial after the jury indicated it was deadlocked. ECF No. 6-10 at 16–17. This Court must defer to the findings of fact by the post-conviction court and, in light of those facts, its rejection of Matthews is a reasonable application of the law to the facts.

### x. Cumulative error

Matthews's final ineffective assistance claim focuses on the cumulative effect of the above-discussed errors which, according to Matthews, rendered the trial unfair. Generally, courts recognize that "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990); *see also United States v. Martinez*, 277 F.3d 517, 532 (4th Cir. 2002); *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009). In the context of a habeas petition raising ineffectiveness claims, however, the United States Court of Appeals for the Fourth Circuit has held that "an attorney's acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'" *Fisher v. Angelone*, 163 F.3d 835, 852 & n.9, 853 (4th Cir. 1998) (quoting *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir 1996)); *see also Arnold v. Evatt*, 113 F.3d 1352, 1364 (4th Cir. 1997); *Higgs v. United*

*States*, 711 F.Supp.2d 479, 552 (D. Md. 2010) (in the context of collateral review, cumulative error doctrine applies to individual constitutional errors).

Discussing Matthews's claims collectively, the post-conviction court aptly noted that the case reflects the "mathematical law that twenty times nothing is still nothing." ECF No. 6-10 at 11, citing *Gilliam v. State,* 331 Md. 651, 686 (1993). Likewise, this Court's thorough review of the record evidence and proceedings below presents no basis to find a constitutional violation by aggregating a series of claims that, at best, assert errors not of constitutional magnitude. Thus, the post-conviction court's cumulative error analysis is neither contrary to clearly established federal law, nor did it involve an unreasonable application of that law pursuant to 28 U.S.C. § 2254(d). Matthews requested relief based on the claimed errors taken cumulatively is thus denied.

## IV. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation omitted).

Matthews has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability. Matthews may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

For the foregoing reasons, the Petition is denied. A separate Order follows.


  12/12/19                                              /S/
Date                                          Paula Xinis
                                              United States District Judge